THE J. RUSSELL MANUFACTURING COMPANY, Appellant, *v.* THE NEW HAVEN STEAMBOAT COMPANY, Respondent.

Where it has been the long-continued practice of a manufacturing company to ship its goods daily by a regular line of steamboats, consigned to its agent for sale, and it has been part of the regular routine of business of the agent, without notice, to call for and receive the goods upon their arrival each day at the carriers' wharf at the place of destination, and to remove them, a specific notice from the carrier of the arrival of each parcel is not necessary. The duty of the carrier, as such, is performed when the goods are landed at the accustomed place and the consignee has had a reasonable time to remove them. But if the goods are received upon a holiday, and it has been the usage for the consignee not to receive goods upon those days, he is entitled to a reasonable time after that day to remove them.

Although in an action against a bailee for loss of or damage to goods by accident the burden of proof of negligence rests upon the plaintiff yet the nature of the accident itself may afford *prima facie* proof of, negligence. If it is one which, in the ordinary course of events, would not have happened but for the want of proper care on the part of the bailee, it is incumbent upon him to show that he took proper precautions; and his failure to furnish this proof, which, if it existed, would have been in his power, may subject him to the inference that such precautions were omitted.

Plaintiff's goods, while upon defendant's wharf, were destroyed by fire occurring in the night time, originating upon the wharf. A large quantity of other freight was upon the wharf and was also destroyed. Evidence was given tending to show that no apparatus or means for extinguishing fires were kept there. A private watchman was left in charge, with some colored men, but neither he nor any of them were produced as witnesses, nor did it appear that he was at his post, or that any person was upon the wharf when the fire broke out. *Held*, that the evidence was such as to require the submission of the question of negligence to the jury, and that a direction of a verdict for defendant was error. (The case of *Lamb* v. *The Camden and Amboy R. R. Co.*, 46 N. Y., 271, distinguished.)

(Argued April 26, 1872; decided November 12, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, affirming a judgment in favor of defendant entered upon a verdict.

This action was brought against defendant, as a common

carrier, to recover damages for the loss of a quantity of cutlery destroyed by fire, upon defendant's wharf, in the city of New York. The facts sufficiently appear in the opinion. At the close of the evidence the court directed a verdict for defendant.

*H. M. Ruggles* for the appellant. The liability of a common carrier as insurer continues until the goods are delivered or a reasonable time for examination and removal after notice is afforded and the goods are deposited in a place of safety. (*Fisk* v. *Newton,* 1 Den., 45; *Price* v. *Powell,* 3 N. Y., 322; *Miller* v. *Steam Nav. Co.,* 10 id., 438; *Goold* v. *Chapin,* 20 id., 266, 267; *Ladue* v. *Griffith,* 25 id., 368; *Hathorn* v. *Ely,* 28 id., 87; *McDonald* v. *Western R. R. Co.,* 34 id., 501; *Northrup* v. *The Syracuse, B. & N. Y. R. R. Co.,* 5 Abb. Pr. [N. S.], 428, 432; *Manhattan Oil Co.* v. *Camden & A. R. R. Co.,* 52 Barb., 85; *Barclay* v. *Clyde,* 2 E. D. Smith, 95; *Rowland* v. *Miln,* 2 Hilt., 150; *Atlantic Nav. Co.* v. *Johnson,* 4 Rob., 499; *Hodges* v. *Hudson River R. R. Co.,* 6 id., 126; *Fenner* v. *B. & S. L. R. R. Co.,* 44 N. Y., 510, 511; *Witbeck* v. *Holland,* 45 id., 17; *Mills* v. *The Mich. Cen. R. R. Co.,* 45 id., 625; *Lamb* v. *C. & A. R. Co.,* 46 N. Y., 271; *Redmond* v. *Steamship Co.,* id., 578; *Richardson* v. *Goddard,* 23 How., 39; *The Eddy,* 5 Wal., 495; *The Mary Washington,* 1 Abb. [U. S.], 3, 4.) The giving of notice was not waived. (*Hyde* v. *T. N. Co.,* 5 T. R., 396.) Whether a reasonable time for removal was afforded was a question of fact for the jury. (*Burnell* v. *N. Y. Cen. R. R. Co.,* 45 N. Y., 186, 187; *Mills* v. *Mich. Cen. R. R. Co.,* 45 id., 626; *Lamb* v. *C. & A. R. R. Co., supra; Ins. Co.* v. *Stark,* 6 Cranch., 273.) The custom of abstaining from work on the 4th of July appearing, the consignee had until the 5th to examine and remove them. (*Mills* v. *N. Y. C. R. R.;* 45 N. Y., 626; *Richardson* v. *Goddard,* 23 How., 39, 44.) No proof of local custom is admissible to vary a contract or override settled rules of law. (*The Reside,* 2 Sand., 567; *Markham* v. *Jaudon,* 41 N. Y., 245; *Reed* v. *Richardson,*

98 Mass., 218.) What amounts to ordinary care, or whether under conceded circumstances a bailee is negligent, is a question of fact. (*Ireland* v. *Oswego R. R. Co.*, 13 N. Y., 533; *Ernst* v. *H. R. R. Co.*, 35 id., 39, 40, 47.)

*S. P. Nash* for the respondent. By the non-removal of the goods on the fourth, defendant was freed from responsibility, save as bailee. (*Richardson* v. *Goddard*, 23 How., 28.) Carriers by rail or steamboat, whose routes end at known wharfs or depots, arriving at regular hours, are discharged as carriers as soon as goods are landed and ready for delivery. (Redfield on Railways, 1st ed., 249, 259; vol. 2 of 2d ed., 54, 55; *The Norway Plains Co.* v *The Boston, etc., R. R. Co.*, 1 Gray, 263; *Thomas* v. *The Boston, etc., R. R. Co.*, 10 Metc., 472; *Farm. & Mech. Bank* v. *The Champlain Transp. Co.*, 16 Vt., 52; S. C., 18 Vt., 131; 33 Vt., 186; 20 Ill., 404, 407; 11 Rich. Law [S. C.], 437.) A usage for the consignee to leave the goods until called for terminates the special liability as carrier. (*Gibson* v. *Culver*, 17 Wend. 305.) So also an arrangement between the parties. *Hathern* v. *Ely*, 28 N. Y., 78; *Fenner* v. *Buffalo, etc., R. R. Co.*, 44 id., 505.) There is no rule of law requiring notice. *Witbeck* v. *Holland*, 45 N. Y., 13; *Roth* v. *B. & C. R. R. Co.*, 34 id., 548.) The occurrence of a fire is not *per se* evidence of negligence. (*Lamb* v. *C. & A. R. R. Co.*, 46, N. Y., 271.)

RAPALLO, J. The facts appearing upon the trial were, that the plaintiff was a company engaged in the manufacture of cutlery at Greenfield, Massachusetts, having an agency in the city of New York for the sale of its products. That for some years previous to the occurrence, out of which this action arose, it had been in the habit of sending its products to its agent at New York via New Haven, their transportation from the latter place to New York being performed by the defendant, by means of a line of steamboats operated by it. That this line plied daily and regularly between New York and

New Haven, leaving and arriving at a particular pier at New York and at regular hours. That all the products of the plaintiff's factory were sent in this manner to its New York agency, coming invariably by the same line, except in case of its interruption by accident, and the goods were received by the agent at New York every day, except Sundays and holidays. It does not appear to have been the practice to send notice of the arrival of the goods to the plaintiff's agent, but to land them on the defendant's wharf, where they were called for daily by a carman who went to the wharf each morning and brought to the store of the plaintiff's agent all goods addressed to him. The carman does not appear to have been in the employ of the steamboat company but of the various parties receiving goods by its boats. The goods now in controversy arrived on the morning of the 4th of July, 1866, and were landed and ready for delivery upon the defendant's wharf as early as eight o'clock A. M. of that day. The receiving clerk of the defendant remained at the wharf all that day and until twelve o'clock at night. The plaintiff's goods were not called for, but remained upon the wharf. Some time during the night or early on the morning of the 5th of July, a fire broke out on the wharf by which the goods were destroyed.

The plaintiff claims that the goods were at the time of their destruction in the custody of the defendant as a common carrier, no notice of their arrival having been given, and a reasonable time for their removal not having elapsed, and that therefore the defendant is liable for the loss, without regard to any question of negligence.

We think that the long established course of business between these parties, in the transportation of the products of the plaintiff's factory to New York, takes the case out of the operation of the general rules applicable to the delivery of goods by common carriers. In ordinary cases, notice to the consignee of the arrival of the goods and a reasonable opportunity, after such notice, to take charge of or remove them, are indispensable to relieve the carrier from his responsibility as such. But in this case it appears to have

been a part of the regular routine of the business of the plaintiff's agent to receive from the defendant's wharf the daily shipment from the factory; the carman came daily to the wharf, whence he conveyed the goods to the store of the consignee, and from this long continued practice the consignee must have known that, in the ordinary course of business, goods arriving from the factory by defendant's line would be awaiting him each day at the steamboat wharf. Where a regular business is thus carried on we think that a specific notice from the carrier of the arrival of each parcel is not necessary, and that his duty is performed when he has landed the goods at the accustomed place, and the consignee has had a reasonable time to remove them. The question remaining to be considered is whether he had such reasonable time.

The practice appears to have been to carry away, each day, the goods arriving in the morning by the boats. A full day, therefore, unquestionably afforded ample time for the removal. It is not claimed, on the part of the plaintiff, that the time was insufficient if the consignee was bound to receive and remove the goods on the 4th of July. But evidence was introduced to the effect that it had, for several years, been the custom of the consignee and others engaged in similar business, and in the habit of receiving goods by the defendant's line, not to keep their stores open or receive or remove goods arriving by defendant's line on that day, and, therefore, the plaintiff claimed that that day was not a reasonable time for their removal, and the carrier was bound to hold them subject to its responsibility as carrier during that day.

The 4th of July is not a legal holiday, except for certain specific purposes, not affecting this case. It presented no legal obstacle to the removal of the goods. (*Richardson* v. *Goddard*, 23 How. U. S. R., 28.) But we think that the evidence, as to the usage claimed by the plaintiff to exist in respect to receiving goods on that day, should have been submitted to the jury, and that they should have been charged as requested, that in case there was such a usage or established course of dealing, in that respect, as was claimed by the plain-

tiff, the consignee was entitled to a reasonable time after that day to remove the goods.

At the close of the trial, the plaintiff requested the court to submit to the jury the question whether the loss occurred by reason of negligence on the part of the defendant. The court refused, and an exception was duly taken to this refusal.

This exception raises the question whether there was any evidence in the case which would have sustained a finding by the jury of negligence on the part of the defendant.

The wharf upon which the fire occurred and the goods were placed appears to have been in the occupation of the defendant; a large quantity of goods besides the plaintiff's were upon it at the time of the fire and were destroyed. It was about 300 feet long, and provided with a gate through which passengers, by the defendant's boats, were admitted. The defendant's receiving clerk was there until about twelve o'clock on the night in question. One of the defendant's boats left the wharf with passengers at about that time. A police officer remained there until a little after midnight, when he left the wharf in its usual condition, with freight piled upon it in proper order and a private watchman in charge with some colored men. The fire occurred at some time between midnight and three o'clock A. M., but at what precise time does not appear. It may be inferred from the evidence and admissions on the trial that the fire originated on the wharf. Two witnesses testified that they had frequently been on the dock, but had never seen any apparatus or means for extinguishing fire there. Neither the private watchman nor the colored men were produced as witnesses, nor did it appear that the watchman was at his post, or that any person was upon the wharf when the fire broke out.

We think that enough was shown to call upon the defendant to explain the circumstances attending the destruction of the property; and that, in the absence of any such explanation, the jury would have been authorized to infer that proper precautions for its safety had not been taken. Whether due caution required that the wharf should be furnished with

the means of extinguishing fire, or that a watchman should be kept there during the night, were questions for the jury, dependent upon the circumstances of danger which may have surrounded the premises. The plaintiff's evidence of the absence of the means of extinguishing fire was not of the most satisfactory character; but the defendant, although possessing the best means of proof upon the subject, did not controvert it; while the fact of the fire originating on the defendant's premises, in connection with the failure of the defendant to offer any explanation of its origin, or even to produce any of the persons said to have been left in charge, or to show that they performed their duty, or that any effort was made to take the goods out of the reach of the fire, were circumstances from which the jury might have drawn inferences unfavorable to the defendant on the question of negligence. The nature of an accident may itself afford *prima facie* proof of negligence (*Curtis* v. *Roch. and Syra. R. R. Co.*, 18 N. Y., 534, 544; Story on Bailments, § 338, 5 Exch., 787; 3 Hurlst. & Coltm., 596; 13 Peters, 181; 5 Ad. & El., 747; 11 Pick., 106; 2 Camp., 79), and we think, as the case stood, the judge erred in not submitting the question of negligence to the jury.

These views do not conflict with the case of *Lamb* v. *The Camden and Amboy R. R. Co.* (46 N. Y., 271), cited on the part of the respondent; although the burden of proof of negligence in such cases unquestionably rests upon the plaintiff, yet he is not always required to point out the precise act or omission in which the negligence consists. Negligence may be inferred from the circumstances of the case. Where the accident is one which in the ordinary course of events would not have happened but for the want of proper care on the part of the defendant, it is incumbent upon him to show that he had taken such precautions as prudence would dictate, and his failure to furnish the proof, where, if it existed, it would be within his power, may subject him to the inference that such precautions were omitted. In *Scott* v. *London, etc., Dock Co.* (3 Hurlst. & Coltm., 596), the rule that the burden

of proof of negligence in this class of cases rests upon the plaintiff was fully recognized, but the rule was laid down thus: "If the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from the want of proper care." The burden of proof on the issue of negligence is not changed by this rule. The jury must find affirmatively that the defendant was negligent; and if, after duly considering all the evidence, and all inferences proper to be drawn from it, they are in doubt, the defendant is entitled to the benefit of that doubt. He is not required to satisfy the jury, affirmatively, that he was free from negligence. That was all that was decided in the case of *Lamb* v. *C. and A. R. R. Co.* The question, what was sufficient *prima facie* evidence of negligence, was not passed upon.

The judgment must be reversed and a new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.