[Note. Cases cited under this letter will be found arranged in alphabetical order under the names of the articles; e. g. "A Raft of Spars. See Raft of Spars, Case No. 11,528."]

## Case No. 1.

### The AALESUND.

### [9 Ben. 203.][1]

District Court, E. D. New York. July, 1877.

DAMAGES TO PERSON—RIGHT OF ACTION — STEVE-DORE.

1. In an action in rem to recover of the ship damages sustained by a stevedore, engaged in discharging cargo, who was thrown down and seriously injured by the breaking of the span-rope that sustained the tackle of slings he had rigged, which rope the master of the bark had rigged expecting to discharge the cargo himself: *Held*, that the putting up an imperfect span-rope was not such a failure of duty on the part of the master in the furnishing of the ship as would give a right of action against her.

[2. Cited in The Rheola, 7 Fed. Rep. 783, to the point that the owner of a defective article is not liable for an injury caused thereby to a mere stranger, unless the article was imminently dangerous.]

[In admiralty. Libel in rem for personal injuries. Libel dismissed.]

Beebe, Wilcox & Hobbs, for libellant.

Butler, Stillman & Hubbard, for claimant.

BENEDICT, District Judge. This action is to recover damages for injuries received by the libellant on board a Norwegian bark when lying in navigable water at one of the piers in New York, discharging her cargo. The libellant at the time he was injured was engaged in the work of discharging the

cargo, and was actually on board the vessel. His duties were to stand at the hatch and as the cargo came up from the hold in the slings to prevent it from catching on the hatch. While thus engaged the span-rope broke, whereby the libellant was precipitated against the combings of the hatch and sustained injury, to recover for which he brings this action against the vessel. It is not disputed that the libellant, while employed as above described, received a serious injury, nor is it denied that the immediate cause of the accident was the breaking of the span-rope while being used to hoist two bags of coffee from the hold of the ship. The evidence shows that the span-rope had been rigged by the master of the vessel when he supposed that he was to discharge the cargo himself by his own crew. Subsequently he determined to employ a stevedore, and a contract was made with one Lloyd to discharge the cargo for so much, paid him by the ship. The libellant was employed by Lloyd, and was acting under his directions. It is usual even when a stevedore is employed to discharge a vessel for the vessel to furnish the span-rope; and when Lloyd was employed he used the span-rope found to have been already put up by the master as above stated, changing its position to correspond with a change in the location of the bark. The libellant himself assisted in rigging the tackle to the span-rope, and had full opportunity to know the condition of the rope so far as was disclosed by external appearance. He made no complaints in respect to the rope, and never objected to using it. The rope was originally a good rope, and was of sufficient size. If it was defective, such defect would not be apparent without a close examination of the condition of the fibre. It had been

[1][Reported by Rob't D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

1 FED. CAS.—1

used four years as a sheet, and upon a test made since the accident the weight of 1183 pounds was hoisted by it without breaking.

On the part of the defence it is contended that the span-rope was not imperfect. and that the accident was caused by the libellant's own negligence in permitting the bags in the slings to catch under the hatch as the horse was hoisting them up. At the time of the accident two bags of coffee were in the slings. It is also contended that as a matter of law there can be no recovery in this action, whether the rope was sound or defective.

I am of the opinion that upon the law of the case the libellant cannot recover in this action. and therefore I do not consider the question of fact, but treat the case as if it were proved that the master of this vessel put up for the purpose of discharging his cargo a span-rope of insufficient strength for that purpose. I also assume for the purposes of this case that the ship would be charged with any damages arising from the neglect of the master in a matter appertaining to the business of the ship, and such I consider the discharging of her cargo to be. In order to charge the ship, at least as much must be proved as would be necessary to make out a cause of action against the master in personam.

It is plain that the right to recover in this action does not arise out of contract. There is evidence that by the contract between the ship and Lloyd, who was employed to discharge the cargo, the ship was to furnish the span-rope, and that a span-rope is part of the tackle, apparel and furniture of a merchant-ship. But there was no privity of contract between the ship and the libellant. The libellant was employed by Lloyd, and was working under his exclusive direction and control. This point is conceded in behalf of the libellant, but it is said the action is in delicto. The fault of the master in the furnishing of the ship resulting in damages is the ground of the proceeding against the ship. The question is, then, whether putting up an imperfect span-rope is such a violation of the duty owing to any who might use the rope in the way the libellant used it as to give a right of action for injuries caused by the imperfect condition of the rope. I am of the opinion that there was no such violation of duty. Injury to a person bearing off the rope attached to the span-rope would not necessarily follow from the breaking of the rope, and the master cannot be held to have put up the rope with the reasonable expectation that such a result would follow if it broke.

None of the cases to which I have been referred appear to justify such a holding. On the other hand, the case of Coughtry v. Globe Woolen Co., [1 Thomp. & C. 452,][2] cit-

ed in Wharton on Negligence, [1st Ed.] § 441, appears to be on all fours with this, and its principle is fatal to the claim of the libellants. See, also, Loop v. Litchfield, 42 N. Y. 351. Again, it is proved and not disputed that the libellant himself saw the span-rope; that he rigged the block to it. and had as full an opportunity to judge of its efficiency as the master had. It is true that the master knew what the libellant did not know—that the rope had been used for a sheet during four years; but four years' use would not necessarily destroy the rope nor make it too weak for the use to which it was put. The effect of such a use would be different in different cases, and its effect on this rope would necessarily be determined by the appearance and condition of the rope itself. As to that the libellant was as well informed as the master, and, having gone to work with the rope without objection or complaint, he cannot now say that the accident was the result of the master's neglect rather than his own. The libel must be dismissed with costs.

## Case No. 2.

### In re A. B.

[3 Ben. 66.][1]

District Court, S. D. New York. Dec., 1868.

BANKRUPTCY—CHOICE OF ASSIGNEE.

Where, at the first meeting of a bankrupt's creditors, but one creditor appeared, and he proved his debt, and elected as assignee a person who was present, and it appeared that this person was a stranger to the creditor, and had informed him of the meeting, and solicited the creditor's vote for himself as assignee: *Held*, that the election of an assignee made under such circumstances could not be sanctioned.

In bankruptcy.

[2][Reversed by court of appeals in Coughtry v. Globe Woolen Co.. 56 N. Y. 124.]

