## THE RHEOLA.

(*District Court, S. D. New York.* January 26, 1881.)

1. PERSONAL INJURY—UNLOADING CARGO—PRIVITY OF CONTRACT— NEGLIGENCE.

   Where a stevedore, having contracted with the steam-ship R. to discharge her cargo of Spiegel iron, with the use of her derrick and chain, employed the libellant to assist in unloading, and the latter, while so engaged in the lower hold, was severely injured by the falling of a loaded tub, with part of the chain which had parted, the break being due to a defective link,—

   *Held*, that the allegation in the answer that the libellant and stevedore were co-servants of the respondent, being obviously a mistake, and there being no privity between the libellant and the respondent, the plaintiff cannot recover for a breach of contract; that in such a case it would seem the employer can only be held liable if the defect in the article that caused the injury was of an imminently dangerous nature; that even if the degree of negligence sufficient to make the respondent liable as employer were enough, still the plaintiff cannot recover,—the evidence showing that the defective chain was examined with ordinary care before being used, was apparently strong enough for the purpose intended, and that the defect was neither known to nor discoverable by the respondent by the exercise of such care.

In Admiralty.

*W. R. Beebe,* for libellant.

*W. W. Goodrich,* for claimant.

CHOATE, D. J. This is a suit *in rem* to recover damages sustained by the libellant on board the British steam-ship Rheola while she was lying at a dock in Brooklyn and her cargo was being discharged. The libellant was in the employ of the stevedore, and acting under his directions. He was in the lower hold, with several other men, engaged in filling the hoisting tubs with Spiegel iron, which they were then discharging. The tubs were hoisted by a chain rigged on a derrick. The derrick and chain belonged to the ship, and

by the agreement between the ship and the stevedore the stevedore was to have the use of the derrick and the chain in discharging the ship. After one of the loaded tubs had been hauled up above the deck, and before it was swung clear of the hatch, the chain parted and the loaded tub and part of the chain fell back into the hold, injuring the libellant very severely. The question is whether the ship is liable for the damages. The test is whether the owner would be liable under the same circumstances at common law. *The Germania*, 9 Ben. 358. The libel alleges that the parting of the chain was caused by defects in it, and to its being unsuitable for the purpose to which it was devoted by the ship; that the accident was caused solely by the neglect of those controlling said ship in using, and permitting to be used such defective chain, and not properly guarding and protecting the said chain and appurtenances. The answer denies the negligence alleged in the libel; avers that the defect in the chain was a latent defect, one which could not be known to the respondent on a careful examidation. It also avers contributory negligence on the part of the libellant, and alleges that the accident was caused by the negligence of his co-servants, who were also, with him, servants of the owner of the ship.

It was proved that the ship was about two years old; that she had, during that time, been engaged in bringing tin and iron from Great Britain to New York; that she was furnished with three hoisting chains of similar character at three of her hatches. These chains had been in use since the vessel was built in discharging her cargoes. They were such chains as were commonly used on ships for that purpose. On the day before the accident the chain at the hatch where this accident happened parted while they were hoisting tin on a platform. It was lifting at the time about 1,700 to 1,800 pounds. The stevedore, with the help of the mate, then unrove the chain from another hatch, and replaced it upon the hatch where the accident happened, and with this chain they commenced discharging Spiegel iron. After several tubs had been hoisted this chain parted, doing the injury to the libel-

lant for which this suit was brought. The weight being lifted was about 1,500 pounds. The link that broke was never found, though search was made for it. The chain was afterwards tested by a competent machinist, and broke at a weight of seven tons. It was somewhat worn where the links came together, especially in the middle, and the testimony showed that it parted not far from the middle. Before putting this chain on at the hatch where it parted an examination of it was made by the mate and the stevedore, by passing it along through the hand and examining the links, bending a few of the links. No defect was then discovered in it. The chain which broke the day before had had two or three times the use which this chain had had, and was more worn. Competent machinists, who examined the chain after the accident, were of the opinion that it was safe for lifting from two to four tons. When they examined it they, of course, did not see the link that parted.

Under these circumstances I think the libellant cannot recover. There was no privity of contract between the ship and the libellant. The averment in the answer that he and those working with him were co-servants of the respondent is obviously a mistake. It is not averred in the libel that libellant was in respondent's employ, and the contrary was proved by libellant himself. The liability, therefore, if it exists, does not arise out of the breach of any contract between these parties; and in such case the rule seems to be that the owner of the defective or dangerous article, by reason of the defect in which injury is done, is not liable unless the defective thing is imminently dangerous. *Loop* v. *Litchfield,* 42 N. Y. 351; *Burke* v. *De Castro Co.* 11 Hun. 353; *The Germania, ut supra.* See, also, *Longmeed* v. *Holladay,* 6 Eng. L. and Eq. 562; *The Aalsemund,* 9 Ben. 203. Even if the degree of negligence which would be sufficient to make the respondent liable as employer were enough, the testimony does not show such negligence. It must be shown that the defect was known to the employer or could have been discovered by him. *De Graff* v. *Railroad Co.* 76 N. Y. 125. See, also, *Jones* v. *Railroad Co.* 11 N. Y. Wky. Dig. 7.

This chain was undoubtedly defective. If it had not been it would not have broken as it did at a weight of 1,500 pounds. But it would not be a proper conclusion from the testimony that the defect could have been discovered by any examination that could have been made. The chain was not so worn down that it had become so weak from that cause alone as to break at any such weight as it was then lifting. This is perfectly evident from the fact that the rest of the chain withstood a strain of seven tons. There is no evidence that the link which parted was more worn than those which withstood this test. Indeed, it would be most unreasonable to suppose that one of the links was so exceptionally worn as to make it incapable from this cause of lifting 1,500 pounds, when all the others were sufficient for lifting seven tons. The broken link being lost, it never has been possible to discover since the accident what the defect was. I am satisfied that ordinary care was used by the respondent in its examination before it was put in use on the day it parted. It was, to all appearance, a fit and proper chain, strong enough for the purpose to which it was devoted, and such an examination was made of it as was under the circumstances required in the exercise of ordinary care. Great reliance is placed by libellant's counsel upon the fact that the other chain broke the day before. This would have been a circumstance much more important if the chains had been subjected to the same or nearly the same use or wear, but they differed so much in this respect that the breaking of the other chain was not calculated to lead to the inference that this one was likely to prove defective.

It is unnecessary to consider whether the libellant was himself negligent, and whether, if his negligence contributed to the injury, it would be a complete defence, or whether in that case, as in some other cases of marine torts, he could recover half his damages. See *The Chandos*, 4 FED. REP. 645. He has undoubtedly received a very severe injury, but he cannot, consistently with established rules of law, recover the damages from this steam-ship.

Libel dismissed.