### HUNT *v.* WALCH.

*(Supreme Court, General Term, Fourth Department.* January, 1889.)

NEGLIGENCE—EVIDENCE—PROVINCE OF JURY.

Plaintiff, while in defendant's employ, was injured by the fall of a box upon his head. It appeared that the box, which was used to catch oil dripping from defend-ant's machinery, was fastened to a beam partly with nails and partly with a twine string. The box had been in the place from which it fell for several months. *Held,* that the question of defendant's negligence was for the jury.

Appeal from circuit court, Onondaga county.

Action by Walter Hunt against Frederick Walch for personal injuries re-ceived while in defendant's employ. Defendant appeals.

Argued before FOLLETT, P. J., and MARTIN, J.

*Hoyt, Beach & Hancock,* for appellant. *Goodelle & Nottingham,* for re-spondent.

FOLLETT, P. J. Appeal from a judgment entered on a verdict, and from an order denying a motion for a new trial made on the minutes, and heard in this court on a case which contains all of the evidence. The defendant occupies a dwelling on West Onondaga street, and a store on South Salina street, in the city of Syracuse. April 19, 1887, the plaintiff engaged to work for the defendant at a price agreed upon. The plaintiff testified that he asked for employment in defendant's store, but that he replied, "No, I have got all the help I want in the store, but I want to get some help around the house, to clean up the lawn, etc. I was coming up to see one of you fellows." De-fendant testified: "I told him I had some work around my houses,—some cleaning up, etc.,—all over, wherever I have got any property, and, if he wanted to, that he should come on. He said he would come the next day. He came the next day, and I set him at work." Such was the contract of hiring, and such was the service for which the plaintiff engaged. At this time the plain-tiff was between 21 and 22 years of age. He had always worked on a farm, except he worked eight months in 1882 and 1883 in a tin-shop in Syracuse, and thereafter he worked for a few months in a pottery. At the tin-shop a freight elevator was in use, which he occasionally used. April 20, 1887, the plain-tiff began and continued to work about defendant's dwelling until April 23d, when the defendant directed the plaintiff and Frank Finkler to clean out the cellar under his store. The store is five stories high, with a cellar under-neath. In the rear of the store there is a freight elevator, between the cellar and the fifth floor. The construction and operation of this elevator are not very clearly described. It was operated by hand, by means of machinery which rested on beams in the upper part of the fifth story. Underneath the machinery a wooden box, about two feet long, one foot wide, and six inches deep, made of inch boards, was placed to catch the oil which dripped from the machinery. The box was held in place by two or four eight-penny nails, and stitching twine wound round the box and the beam above. This box had been in use some months. There seems to have been no roof to the car, and whatever fell from above it fell to its floor. During a part of April 23d the plaintiff and Finkler were engaged in removing ice and dirt from the cellar to an alley in the rear of defendant's store. This was done by filling a box with

the material to be removed and placing it upon the floor of the car, when the plaintiff and Finkler would enter the car, and elevate themselves and the box of dirt to the first floor. The box was then removed, emptied in the alley, carried back to the car, and the two young men would lower it, with themselves, to the cellar. This operation was repeated many times during the day, and it very clearly appears that it was with the knowledge and sanction of the defendant. About 6 o'clock in the evening, while the young men were drawing themselves and this box of dirt from the cellar to the first floor, the oil-box above described, which hung underneath the beams at the top of the fifth story, fell and struck the plaintiff near the top and on the right side of his head. The box had an uninterrupted fall of between 50 and 60 feet. Both tables of the plaintiff's skull were crushed, and the membranes covering the brain exposed and injured. It was a painful and serious injury, from which the plaintiff has not and probably will not recover. The verdict, if the plaintiff is entitled to one, is not excessive, and cannot be disturbed on that ground.

There is no evidence that the plaintiff or Finkler did, or omitted to do, any act which caused the oil-box to fall, or contributed in any way to the accident; and the principal question is, did the defendant do, or omit to do, any act which entitles the plaintiff to his verdict? The rule that an employer must exercise due care to supply his employés with safe machinery is so well settled and so frequently applied that it is unnecessary to do more than refer to it. That the box was insecure is demonstrated by the result; but the result does not necessarily establish that the defendant is liable for the consequences. The precise mode by which this oil-box was secured to the beams is not made very clear by the record, but the evidence seems to have been illustrated by gesticulation and diagrams which probably rendered it clear to the trial court. The evidence which describes the oil-box, its location, how it was secured, the circumstances attending its fall, and the car, was such that the trial court would not have been justified in ruling that it was insufficient to authorize the jury to find a want of due care in equipping and caring for this elevator. *Lyons* v. *Rosenthal*, 11 Hun, 46; *Byrne* v. *Boadle*, 2 Hurl. & C. 722; *Scott* v. *Docks Co.*, 3 Hurl & C. 596; *Briggs* v. *Oliver*, 4 Hurl & C. 403; *Kearney* v. *Railway Co.*, L. R. 5 Q. B. 411, affirmed L. R. 6 Q. B. 759; *Caldwell* v. *Steam-Boat Co.*, 47 N. Y. 282; *Manufacturing Co.* v. *Steam-Boat Co.*, 50 N. Y. 121, 127; *Mullen* v. *St. John*, 57 N. Y. 567; *Seybolt* v. *Railroad Co*, 95 N. Y. 562, 568; *Gerlach* v. *Edelmeyer*, 15 Jones & S. 292, affirmed 88 N. Y. 645; 1 Shear. & R. Neg. (4th Ed.) §§ 59, 60; Smith, Neg. (2d Ed.) c. 6; 2 Thomp. Neg. 1220–1223; 1 Whart. Ev. (3d Ed.) § 359; 1 Tayl. Ev. (6th Ed.) § 150*a;* Id. 8th Ed. § 188. The defendant, on his part, did not so completely rebut or overthrow the plaintiff's evidence, or the inferences which might have been drawn from it, as to justify a nonsuit, or the direction of a verdict for the defendant at the close of the evidence. The plaintiff's evidence in respect to the oil-box, its location, how secured, its fall, the construction and use of the car, and the circumstances surrounding the accident, was not materially changed by the evidence produced in behalf of the defendant. Although the defendant personally ordered this box to be put in this place, and knew the person who put it there, there was no satisfactory explanation of how it was secured, for what purpose the twine was wound around the box and beam, and, if securely nailed, why the twine was used. Finkler, an employé of the defendant at the time of the trial, testified that the oil-box was then at defendant's store, and it was suggested that it be produced; but it was not, nor was it explained why not, nor does it appear why it, its cleats and nail holes, were not clearly described. No attempt was made to show whether it was intended to affix this oil-box permanently under the machinery, or so that it could be conveniently removed for cleaning, or for some other purpose. If permanency was intended, why was twine used to

hold it in place? Ordinary prudence would seem to have suggested, in advance of an accident, that a box suspended over the heads.of employés, if it fell, would be likely to cause great injury, and that great care should be taken to secure it. Whether due diligence was exercised as between the employer and employé was a fair question of fact for the jury, and the verdict cannot be disturbed.

None of the evidence of the plaintiff's mother is open to the objection that she gave the plaintiff's declarations in his own favor. She narrated what she saw in respect to his disability, and said he was accustomed to close his left eye and look with his right one; otherwise things looked double to him,—and then added: "I could not know that things looked double to him, except as he said so." This was not a repetition of the plaintiff's declarations, but was called out in response to defendant's objection, and was entirely harmless. It was undisputed that plaintiff's left side had become paralyzed by reason of the injury, and the extent of his disability was not questioned. No error was committed in receiving the evidence of the plaintiff's mother. At folio 202 the court was requested to charge that if Steiner, who had some charge of the elevator, was negligent in the discharge of his duties, and the plaintiff was injured by his negligence, then he could not recover. We think there was no evidence on which to base the request. There is no evidence that Steiner did anything in respect to this box, or caused, by any act of his, the accident. The defendant was in personal charge of his store and business, and this box was placed in its position by his personal direction. He does not show that he gave specific directions as to how it should be secured, and concedes that he knew that it was secured in part by twine. We think that no error available to the defendant was committed at circuit, and that the judgment and order must be affirmed, with costs.