(159 App. Div. 131.)

## REGAN v. BURR & CO.

(Supreme Court, Appellate Division, First Department. November 14, 1913.)

1. BAILMENT (§ 31*)—ACTION BY BAILOR—BURDEN OF PROOF.
    A presumption of liability by a bailee for the negligent loss of the property arises when he fails on demand to deliver the bailed property; but such presumption may be overcome by showing that the loss was caused by accident, when the burden remains upon the bailor throughout the trial to prove that the loss was caused by the bailee's negligence, though the bailee's evidence tends to show negligence.
    [Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 124–131; Dec. Dig. § 31.*]

2. BAILMENT (§ 31*)—ACTION BY BAILOR—LOSS OF PROPERTY—SUFFICIENCY OF EVIDENCE—NEGLIGENCE.
    Evidence, in an action by the owner of an automobile, for damages for injury to it while it was in defendant's possession for rebuilding, by the elevator on which it was being moved falling, *held* not to sustain a finding of negligence by defendant in maintaining and operating the elevator.
    [Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 124–131; Dec. Dig. § 31.*]

    Ingraham, P. J., and Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by James B. Regan against Burr & Co. From a judgment for plaintiff and an order denying a motion for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Frank V. Johnson, of New York City, for appellant.
Max D. Steuer, of New York City, for respondent.

DOWLING, J. This is an appeal from a judgment entered upon a verdict in favor of plaintiff in the sum of $2,500.

Plaintiff was the owner of a Pierce-Arrow automobile, from which he desired to have the touring body removed, and a limousine attached in place thereof. He employed defendant to do the work of removing the one body and substituting the other, and for that purpose the car was delivered at defendant's place of business in the city of New York. Shortly before it had been overhauled, and is claimed to have been in first-class condition in every particular when it was delivered on February 2, 1911. After passing into defendant's custody, the car was next seen by the plaintiff's representative on February 5th, when it was lying at the bottom of the elevator shaft in defendant's factory,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

so badly damaged that the plaintiff claims that it was practically use-
less, although defendant claims that it could have been repaired at an
expense of approximately $1,200. It appears that the car had been
placed upon the freight elevator by defendant's representative for its
conveyance from the fifth floor of the building to the basement. This
elevator was operated by means of ropes by the employé who had
placed the car thereon, and who remained at the fifth floor. No one
was supposed to ride upon this elevator, and its control was entirely
outside of the elevator itself. After the elevator had been started on
its descent, and had gone some distance, it continued its downward
course despite the efforts of defendant's employé to stop it by means
of the check rope, so that the elevator with the car upon it finally
struck the bottom of the shaft. The mechanism operating the elevator
still continued to move through the application of the power, and as the
result thereof the counterweights fell, and assisted in damaging the
car. Just how much of the damage was due to the fall of the weights,
and just how much to the shock of the elevator platform striking upon
the bottom of the shaft, does not clearly appear. When the power was
finally shut off, some two minutes or less had elapsed.

It appears that the capacity of this elevator was 5,000 pounds, and
that the chassis weighed between 3,200 and 4,000 pounds. The ele-
vator in question was a standard one, bought from the American Ele-
vator Company, and inspected periodically by the Travelers' Insurance
Company; any repairs suggested after the inspection being promptly
made by the company. It was last overhauled by them on January 20,
1911; the work having been completed on February 3d, only two days
before the accident.

In the operation of this elevator, its motion was controlled by ropes;
the pulling of a rope in one direction causing the elevator to ascend,
and its pulling in the other direction causing it to descend. There was
a check line, the upper end of which was joined to the two parts of the
operating cable by means of chains, and when that line was pulled taut
the two chains became centered, and the operating wheel was brought
into a proper position to shut off the power.

When it was sought to shut off the power from the elevator on the
day of the accident, it sufficiently appears that one of the links of the
chain attaching the check line to one side of the operating cable be-
came caught or fouled upon the end of one of the bolts by means of
which the upper stop ball was clamped to the operating cable. Such
being the situation, it became impossible to move the operating cable
so as to shut off the power. The operating wheel being thus held fast,
the car continued to descend. The reason that the link of the chain
hereinbefore referred to became fast to the end of one of these bolts
was that the end projected from three-eighths to one-half of an inch
outside of the nut through which it passed. Despite the periodical ex-
amination of this elevator by the inspection company, no one seems to
have remarked this projection, although there is evidence that it should
have been discovered upon any proper inspection. It does appear
from the examination of the plaintiff's own expert, who testified that
this method of construction with such a projection was not a safe one,.

that the device used was an ordinary one, and that the danger of one of the links catching in such a projection had never been heard of by him before this particular accident, nor had he any reason to believe there would have been danger therefrom from his experience prior to this occurrence. The testimony shows that this elevator was of an ordinary type commonly used for the purposes of a freight elevator in this city, and there was no attempt made to show any defect in its construction, apart from the projecting bolt just referred to.

[1] In Stewart v. Stone, 127 N. Y. 500, 28 N. E. 595, 14 L. R. A. 215, the rule governing the liability of a bailee is laid down as follows:

"As a general rule, when a bailee fails on demand to deliver to the bailor property to which the latter is entitled, the presumption of liability arises, and if the goods cannot be found it furnishes the imputation of negligence as the cause. Fairfax v. N. Y. C., etc., R. R. Co., 67 N. Y. 11. But such prima facie case may be overcome when it is made to appear that the loss was occasioned by some misfortune or accident not within the control of the bailee; then the onus continues upon the bailor to prove that it was chargeable to the want of care of the bailee. Claflin v. Meyer, 75 N. Y. 260 [31 Am. Rep. 467]; Mills v. Gilbreth, 47 Me. 320, 74 Am. Dec. 487. And although it may be that the proof given by him, explanatory of the reason for nondelivery, may disclose circumstances which in their nature permit or require the inference of negligence on his part (Russell Mfg. Co. v. N. H. Steamboat Co., 50 N. Y. 121), the affirmative of the issue is not shifted to the defendant, but remains through the trial with the plaintiff (Heinemann v. Heard, 62 N. Y. 448; Blunt v. Barrett, 124 N. Y. 117 [26 N. E. 318])."

[2] Upon the whole case as presented to us, not only did the plaintiff fail to prove negligence upon the part of the defendant in the installation or operation of this elevator, but the preponderance of the proof is that the elevator was a proper and sufficient one at the time of its installation, that it was maintained in proper condition by frequent and adequate inspection, and that the existence of this slight projection in the bolts beyond the surface of the nuts through which they passed was not one from which it could reasonably be apprehended that danger would arise. As a matter of fact no one had foreseen the possibility of such an accident occurring due to this cause. We are of the opinion, therefore, that the finding that the defendant was negligent in the maintenance and operation of this elevator is against the weight of the evidence, and the judgment and order must therefore be reversed, with costs, and a new trial granted, with costs to the appellant to abide the event.

SCOTT and HOTCHKISS, JJ., concur.

INGRAHAM, P. J. (dissenting). Plaintiff delivered this automobile to defendant, who undertook to make certain repairs or additions to it at a fixed price to be paid by the plaintiff to the defendant. While the automobile was in the defendant's custody, it was injured, and, on the plaintiff's demand for the return of his automobile with the repairs or additions, such return was refused. As I understand the rule, on the failure to deliver the automobile to the plaintiff, a presumption of liability arose, which would entitle the plaintiff to recover, unless the defendant established that the return of the automobile was prevented

by some misfortune or accident not within the defendant's control. To meet this burden the defendant undertook to show that the automobile was injured by the fall of an elevator owned and operated by the defendant, and that the fall of that elevator was not due to any negligence of the defendant. Considering the presumption that arose, the nature of the accident, the condition of the elevator owned and operated by the defendant, I think a question for the jury was presented, and, as that question was submitted to them, I do not think their verdict should be disturbed.

I therefore dissent from the reversal of this judgment.

LAUGHLIN, J., concurs.