BRAMAN-JOHNSON FLYING SERVICE, INC., Plaintiff, *v.* JOHN B. THOMSON, JR., Defendant.

Municipal Court of New York, Borough of Queens, Fourth District, April 12, 1938.

*James A. Travis,* for the plaintiff.

*Wherry, Condon & Forsythe* [*Cyril H. Condon* of counsel], **for** the defendant.

PETTE, J. On the 2d day of October, 1937, the plaintiff, at Roosevelt Field, L. I., rented a Ryan monoplane to the defendant.

The complaint sets forth a cause of action for the alleged negligence of the defendant in the operation of said plane; $800 for alleged repairs, and $175 additional for loss of use. According to the allegations of the complaint, the plaintiff advised the defendant at the time of hiring that the monoplane contained enough gas for approximately forty-five minutes' flight, although the defendant only desired to use the plane a half hour for acrobatic maneuvers.

Prior to this occasion, the defendant admitted that he had flown the same plane " two landings and take-offs before." He also testified that he was an experienced pilot with about three hundred hours in the air.

On the date of the accident there was also a check flight of about five minutes made by the plaintiff's chief pilot and the defendant to see that the plane was in good working order.

Then the defendant and his friend Irwin took off, and after flying for more than forty-five minutes exhausted his gasoline supply in the main tank, and made a forced landing at a point on Long Island sound, damaging the plane.

The pleadings set forth, in substance, an alleged cause of action in tort for the negligent misuse of the bailed plane, based upon (a) the defendant's failure to perform acrobatic maneuvers in the immediate vicinity of Roosevelt Field for a period of not more than thirty minutes as the defendant allegedly represented; and (b) that the defendant, knowing that the plane contained fuel for a flight period of not more than forty-five minutes, flew the plane to Port Chester and return, a flight consuming more than forty-five minutes' time, and resulting in the aforementioned forced landing due to fuel exhaustion; (c) that the defendant failed to check and observe the gasoline gauge on the monoplane to ascertain the amount of fuel still available in the reserve tank; (d) although he was aware of the fact that the *main* fuel tank contained insufficient fuel for the flight which he took, thus failing to use ordinary reasonable precaution; (e) and that the defendant failed to turn on and use the gasoline in the three-gallon reserve tank when the fuel in the main tank was consumed.

The defendant, in substance, denies the plaintiff's contentions, and raises several important issues of fact.

Before indicating the reasons for my opinion, I wish to commend the attorneys for both sides in submitting well-prepared and exhaustive briefs, indicative of their keen interest herein.

Research of the reported authorities and inquiries in connection therewith fail to reveal a similar factual situation.

However, the general rules of bailment apply to aircraft just as they do to automobiles for hire. (*Whitehead* v. *Johnson*, 150 Misc. 86; *Transcontinental Airport of Toledo, Inc.*, v. *Ogden*, 41 Ohio App. 203; 180 N. E. 737; *Ambassador Airways, Inc.*, v. *Frank*, 124 Cal. App. 56; 12 P. [2d] 127.)

Furthermore, it seems that rules of law applicable to torts generally govern in this type of action. To the same effect is the case of *Wilson* v. *Colonial Air Transport, Inc.* (278 Mass. 420; 180 N. E. 212, 214), in which the court holds: " The rules of law relating to the operation of aircraft, in the absence of statute, in general are rules relating to negligence and nuisance, and are not distinguishable from those which relate to the operation of vehicles, perhaps, more closely, to vehicles on land."

These principles of law are similarly applied by this court in the case of *Read* v. *New York City Airport, Inc.* (145 Misc. 294).

Actionable negligence generally consists in a failure of a duty, the omission of something which ought to have been done, or the doing of something which ought not to have been done. (*Toppi* v. *McDonald*, 128 App. Div. 443; affd., 199 N. Y. 585; *Herman* v. *City of Buffalo*, 214 id. 316.)

The test of actionable negligence is what a reasonably prudent person would have done under the circumstances before the accident. (*McRae* v. *Chelsea Fibre Mills*, 145 App. Div. 588; *Daurizio* v. *Merchants Despatch Transp. Co.*, 152 Misc. 716.) The degree of care that is required to be exercised by any person owing a duty to exercise reasonable care varies with the dangers which are incident to his failure to exercise care. (*Goldman* v. *New York Railways Co.*, 185 App. Div. 739.)

To constitute actionable negligence, the injury must be the natural consequence of the alleged negligent act, or one which might reasonably have been anticipated. (*Ehrich* v. *Guaranty Trust Co.*, 194 App. Div. 658; affd., 233 N. Y. 637.)

The crux of the present case depends on whether or not the defendant exercised reasonable care in the operation of the main and reserve fuel tanks.

Applying then the ordinary rules of law to the facts at bar, I find, upon the whole case, that the defendant did not operate the plane in a careful and prudent manner. This is clearly shown by the following excerpt of testimony by the defendant: " Q. In all your ten years experience of flying these various aeroplanes did you receive instruction as to operation of the reserve gasoline tank in case of emergency? A. I have. Q. When a motor dies, it either does so from lack of ignition, lack of gasoline or other faults, is that correct? A. Naturally. Q. In the air, the only thing you

can do is check your gas and ignition, is that right? A. Yes. Q. You cannot get out and inspect the motor, isn't that correct, *so you checked everything but your gasoline supply?* A. *Yes.* Q. *You didn't think of turning on your reserve?* A. *That's right, I didn't think of it.*"

This admission by the defendant, an experienced pilot of more than 300 hours in the air, shows clearly that it was his negligence that caused the forced landing, because had he turned on the reserve tank, which contained three gallons of fuel, he would have been able to return to the flying field without a mishap. Under the circumstances it is plain that the defendant did not exercise due diligence and reasonable care to keep the plane from crashing.

The defendant concededly is not an insurer of the craft which he hired; nevertheless, he was bound to exercise the elementary principles of safe flying, which are clearly stated in texts such as " Flying and How To Do It," by Assen Jordanoff, etc.

The defendant's contention as to the plaintiff's use of an experimental propeller is without merit since there is no proof that there was any causal relation between the crash and the claimed departmental violation. (*De Haen* v. *Rockwood Sprinkler Co.*, 258 N. Y. 350; *Lang* v. *New York Cent. R. R. Co.*, 227 id. 507; *Egan* v. *Thompson-Starrett Co.*, 209 id. 110, 114.) Mere failure to comply with the Department of Commerce rules did not constitute negligence *per se,* where the defendant's negligence was the proximate cause of the damage. (*Egan* v. *Thompson-Starrett Co., supra.*)

Approaching the questions herein from another angle, *i. e.,* upon the principles of bailment, we find that it, like all laws which sprang up years ago, must bend to modern conditions. The law must be flexible enough to permit trade, traffic and commerce to move. It must yield and adjust itself to the progress of our civilization.

The hiring of the plane by the defendant constituted a bailment contract. Bouvier defines bailment as " a delivery of something of a personal nature by one party to another, to be held according to the purpose or object of the delivery, and to be returned or delivered even when that purpose is accomplished."

The rule appears to be well settled that where property is in the exclusive possession of a bailee for hire and is damaged in a way that ordinarily does not occur without negligence, the burden of proof is upon the bailee to show that the injury was not occasioned by his negligence. (*Collins* v. *Bennett,* 46 N. Y. 490; *Wintringham* v. *Hayes,* 144 id. 1, 6; *Powers* v. *Jughardt,* 101 App. Div. 53.)

In an action against a bailee for loss or damage to goods by accident, proof of the nature of the accident itself may afford *prima facie* proof of negligence. (*Russell Mfg. Co.* v. *New Haven Steam-*

boat Co., 50 N. Y. 121; *Curtis* v. *Rochester & Syracuse R. R. Co.*, 18 N. Y. 534, 544; Story on Bailments [9th ed.], § 338.)

After the initial check flight, the rented plane was placed in the sole custody of the defendant. As an experienced pilot he had ample opportunity to check the gas tank and other parts of the plane prior to taking off for his acrobatics.

I believe that enough proof was shown by the plaintiff to call upon the defendant to explain the circumstances of the damaging of the plane; whether he exercised proper precautions in the operation thereof, etc. The defendant's evidence as to his operation of the plane, particularly with reference to the reserve fuel tank, was not of the most satisfactory character.

Although the burden of proof of negligence in such cases unquestionably rests upon the plaintiff, yet he is not always required to point out the precise act or omission in which the negligence consists. (*Russell Mfg. Co.* v. *New Haven Steamboat Co., supra*, p. 127.) Negligence may be inferred from the circumstances of the case.

Where the accident, as in the case at bar, is one which in the ordinary course of events would not have happened but for the want of proper care on the part of the defendant, it is incumbent upon him to show that he had taken such precaution as prudence would dictate, and his failure to furnish the proof, where, if it existed, it would be within his power, may subject him to the inference that such precautions were omitted. (*Russell Mfg. Co.* v. *New Haven Steamboat Co.*, 50 N. Y. 121, 127.)

Furthermore, the defendant's conduct after the accident supports the plaintiff's testimony in that he paid for *forty-five minutes'* flying time, although his original intention was only to use the plane one-half hour. Even assuming that the defendant had no specific instructions as to the reserve fuel tank, nevertheless, by his own admissions, he stated that he was acquainted with and possessed knowledge of reserve tanks on other planes for the past ten years, and that he was acquainted with aeronautical text books. It is also significant that the motor failed *only* after approximately *forty minutes* flying, due to exhaustion of the gasoline in the main tank compartment; and that the reasonably prudent operation of the plane at the time by the defendant should have required the use of the three gallons of gasoline available in the reserve tank, instead of attempting a forced landing at a hazardous location.

" Take nothing for granted when you fly " (Flying and How To Do It, p. 270, by Assen Jordanoff) is a worthy axiom to be remembered by all pilots. Checking gasoline and oil in a plane is an elementary precaution.

As has recently been stated in *Herrick & Olsen* v. *Curtiss Flying Service* (1932 U. S. Aviation Reports, 110): "Pilots owe to themselves and each other the duty of operating their planes as reasonably careful and prudent men would operate them under the same circumstances. Ordinary care * * * is the degree of care that men of reasonable vigilance and foresight ordinarily exercise in the practical conduct of their affairs."

The defendant, in failing to do as he represented to the plaintiff's employees and in taking a longer trip than he agreed to, was guilty of negligence, want of care and misuse of the bailed article, said deviation without proper care in the use of the reserve fuel tank, being the direct and primary cause of the accident and resulting damage.

From the foregoing, it is apparent that the plaintiff is entitled to judgment upon the merits.