(120 App. Div. 192)

BERTOLAMI v. UNITED ENGINEERING & CONTRACTING CO.

(Supreme Court, Appellate Division, First Department. June 21, 1907.)

1. MASTER AND SERVANT—DUTY TO PROVIDE SAFE PLACE TO WORK.

The rule requiring an employer to furnish his workmen with a safe place to work has no application to a case where the men were engaged in creating the place, which was unsafe because of the very work which they were doing.

2. SAME—ACTIONS—NEGLIGENCE OF MASTER—QUESTION FOR JURY—EMPLOYER'S LIABILITY ACT.

In an action for injuries received while excavating a tunnel, brought under the employer's liability act (Laws 1902, p. 1748, c. 600, which provides that, where personal injury is caused to an employé who is himself in the exercise of due care and diligence at the time, "by reason of the negligence of any person in the service of the employer, intrusted with and exercising superintendence * * * with the authority or consent of such employer," the employé shall have the same remedy against the employer as if he had not been engaged in the employer's service, *held*, that the question as to whether there was negligence of the employer or his superintendent which caused the injury should have been submitted to the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1000, 1001, 1026.]

3. SAME—INSTRUCTIONS—SUFFICIENCY OF EVIDENCE.

Where, in an action for injuries received while excavating a tunnel under such circumstances that the question of a safe place to work was not presented, the main charge was indefinite as to the principle upon which the defendant could be held liable, the defendant was entitled to an instruction that there was no evidence to show that the defendant did not furnish to his employés a safe place to do the work.

4. NEGLIGENCE—EXERCISE OF ORDINARY CARE.

Where the foreman of a gang at work excavating a tunnel, after examining the roof and being advised that it was safe, honestly believed that a column which supported the roof could be safely removed, and acting upon such belief and in the exercise of ordinary care and prudence caused the column to be removed, he was not negligent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, § 6.]

Appeal from Trial Term.

Action by Pasqualina Bertolami, administratrix of George Bertolami, against the United Engineering & Contracting Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Theron G. Strong, for appellant.

J. Brownson Ker, for respondent.

INGRAHAM, J. The plaintiff's intestate, while in the employ of the defendant, received injuries which resulted in his death, and his administratrix commenced this action to recover the damages sustained thereby. The court submitted the case to the jury, who found a verdict for the plaintiff for $10,000. The action is based upon the employer's liability act (chapter 600, p. 1748, of the Laws of 1902), which provides that, where personal injury is caused to an employé who is

himself in the exercise of due care and diligence at the time, "by reason of the negligence of any person in the service of the employer intrusted with and exercising superintendence whose sole principal duty is that of superintendent, or, in the absence of such superintendent, of any person acting as superintendent with the authority or consent of such employer," etc. Section 3 provides that:

"An employé by entering upon or continuing in the service of the employer shall be presumed to have assented to the necessary risks of the occupation or employment and no others. The necessary risks of the occupation or employment shall, in all cases arising after this act takes effect be considered as including those risks, and those only, inherent in the nature of the business which remain after the employer has exercised due care in providing for the safety of his employés, and has complied with the laws affecting or regulating such business or occupation for the greater safety of such employés. * * * The fact that the employé continued in the service of the employer in the same place and course of employment after the discovery by such employé, or after he had been informed of, the danger of personal injury therefrom, shall not, as a matter of law, be considered as an assent by such employé to the existence or continuance of such risks of personal injury therefrom, or as negligence contributing to such injury. The question whether the employé understood and assumed the risk of such injury, or was guilty of contributory negligence by his continuance in the same place and course of employment with knowledge of the risk of injury shall be one of fact subject to the usual powers of the court in a proper case to set aside a verdict rendered contrary to the evidence."

The plaintiff's intestate was one of a gang of men employed by the defendant in the excavation of a tunnel 90 feet below the level of the street. On August 7, 1906, plaintiff's intestate went to work at 7 o'clock at night, to work until 6 o'clock in the morning. It would appear that the tunneling at this point was through rock, and men were engaged in drilling holes therein and blasting out with explosives. The tunnel was between 35 and 40 feet wide and about 12 feet in height. A fellow workman of plaintiff's intestate testified: That at regular intervals of 30 or 40 feet there were five iron columns placed to support the roof of the tunnel. On the top of these columns there were blocks which were jacked up against the roof. That steam drills were attached to these columns. That there was a man in charge of this gang of men, named Carniel, from whom the members of the gang received their orders as to the work they were to do. Some time prior to the accident Carniel, the superintendent, spoke to the witness, who was also a rock driller, directing him to take one of these columns down; but he refused to do so, as he did not like the appearance of the roof of the tunnel. Subsequently Carniel gave instructions to some Italians who were working there, and these Italians took the central column down. That the rock at this point looked to the witness as though it might fall at any time, and a space above this column of 4 or 5 feet was left entirely unsupported after the removal of the column. Subsequently a stone fell from the roof of the tunnel, at the point from which this column had been removed, upon the plaintiff's intestate, instantly killing him. The rock fell about 10 or 15 minutes after the column had been removed. The plaintiff's intestate was one of the men who removed the column, and at the time of the accident he was putting in timbers to block up the roof of the tunnel where the column had been removed. There was also evidence

that, at the time the superintendent told the men to remove the central column, the other four columns had been removed; that the roof was supported by the timber on the left of the column near to it, and to the right of the column there was a space of seven or·eight feet which was left unblocked and unsupported; that the stone on the roof of the tunnel appeared to be soft.

On behalf of the defendant the foreman testified that the plaintiff's intestate had been at work blocking and wedging the blocks to support the roof; that the blocking had been done at the time the column was taken down right up to the column on the left-hand side; that men had begun blocking on the right-hand side within about 20 inches from the column; that the plaintiff's intestate helped the witness to take down·the column, so that the blocking could be continued; that before they took the column down the plaintiff's intestate was asked if the roof was secure, to which he replied that it was; that the column ·was then taken down, and the men, including the plaintiff's intestate, commenced to block up the roof with the timbers. The foreman left the defendant's employ two days after the accident. Before the columns were taken down the foreman examined the rock and found it kind of soft, but a little further in it was hard and solid; that he thought it was the right thing to remove the column.

The inference from the testimony is that as the work advanced the iron columns were taken down and carried forward; the timber supports to the roof and sides taking their place. The plaintiff's·intestate, with the·other men, was thus engaged in substituting the timber support for the support furnished by the iron columns. It does not appear whether or not it was necessary to remove the columns to insert the timber supports, but the natural inference would be that the supports could not be completed until after the columns were taken away. The evidence is that the timbering had been completed up to the column on the left-hand side, but there was a space variously estimated at from two to seven feet on the left side of the column in which there was no support to the roof. The men engaged in the work of substituting the timber for the iron columns took down the column and continued at work inserting the timber to take its place, and while thus engaged the piece of rock fell.

But for the provisions of the employer's liability act it would be clear that there would be no liability of the defendant for this accident. It has been lately held that the rule requiring an employer to furnish his workmen with a safe place to work has no application to a case where the men were engaged in creating the place, which is unsafe because of the very work that they are doing. See Citrone v. O'Rourke Engineering C. Co., 188 N. Y. 339, 80 N. E. 1092. In that case, as in this, the work considered as a whole was the construction of a trench through earth and rock in the city of New York. There, as here, there was first blasting, and after the blasting the removal of the blasted material. The plaintiff was one of a gang of workmen who removed the blasted material after the blast, and while thus employed was injured by the falling of some loose stone and earth from the side of the trench. The place where the accident occurred was a trench 14 feet deep and 6 or 7 feet wide, and there was shoring at the side to the

height of 5 or 6 feet from the bottom, but no further up. The court left it to the jury to say whether the trench was made reasonably safe for the work of removing the blasted materials, and whether the trench where the plaintiff was employed was made as safe as a trench where the work of excavating and blasting is carried on ordinarily is made by ordinarily prudent men. The Court of Appeals held that the duty of a master to furnish his servant with a reasonably safe place to work has no application to that case, saying:

"Whatever was the danger to which the men were exposed it was due to the manner in which the work was prosecuted. A degree of safety near the head of the trench was constantly subject to change as the trench was extended. Under such circumstances the rule of law which makes it incumbent upon an employer to provide or maintain a safe place in which his employés are to do their work has no application."

The rule thus stated is based upon the fact that, where the men are engaged in excavating a trench or tunnel, from the nature of the work to be done the place where the men are required to work is the head of the excavation. The only place that can be furnished to the man is the place in the tunnel at the point of excavation. From the necessity of the case at that place there is danger of the roof or rock caving in; but, as it is the only place that can be furnished for the men engaged in excavating to work in, it is quite impossible for the master to furnish his workmen any other place to do their work. As there could be no other place for the men to work, there could be no liability on the part of the defendant for furnishing them with this place in which to work; but it seems to me that under the employer's liability act there is a further question as to whether there was negligence of the employer or his superintendent which caused the injury, and thus in this case the court was required to submit that question to the jury.

The jury were instructed that the defendant owed the decedent a duty to prosecute this work without any negligence upon its part and in the exercise of due care and diligence; that to render the defendant liable there must have been some positive fault, either of commission or omission, on its part; that if the jury found that the injury to the decedent resulted or was caused by neglect of the defendant in failing to use due care in view of all the circumstances, and that the decedent was free from any negligence on his part contributing to the accident, then the verdict should be for the plaintiff. The defendant then asked the court to charge that:

"The plaintiff has failed to establish that the defendant was negligent in furnishing a reasonably safe place to work, reasonably safe appliances to work with, and competent fellow servants."

This was refused, and to that the defendant excepted. It seems to me that the defendant was entitled to this charge. As we have seen, the question of a safe place to work was not presented. The only place at which the men engaged in excavating this tunnel could work was where the excavation was required, and the only place they could work at putting in this timber was where the timber was to be put in. The men were engaged in supporting the roof and sides of the tunnel to continue the excavation. To do the work that they were

required to do, they had to work at the place where they were working, and there was no question of furnishing them with a safe place to work. The only ground of liability would be, under the employer's liability act, as to whether the method adopted by the foreman or superintendent in carrying out or conducting the operation at this particular point was negligent—an entirely different proposition from the duty imposed upon the master to furnish to his employés a safe and proper place in which to do their work. The main charge was quite indefinite as to the principle upon which the defendant could be held liable, and the defendant was entitled to have the jury instructed that there was no evidence to show that the defendant did not furnish to his employés a safe and proper place to do the work; for that eliminated one element of negligence which was alleged in the complaint as a ground of defendant's liability.

The defendant also asked the court to charge that:

"If Baptiste, the alleged foreman, believed that it was safe to remove the column supporting the roof, and acting on such belief and in the exercise of ordinary care and prudence caused the same to be removed, the defendant is entitled to a verdict."

I think the defendant was entitled to this charge. Baptiste had sworn that he examined this roof before he removed the column with a crow-bar; that he found the roof soft at the surface, but further in solid; that he believed it was entirely safe to remove the column; and that he had consulted plaintiff's intestate, who, it would appear, knew as much about the situation as the foreman, and plaintiff's intestate had said it was safe; that, acting on what was his judgment, reinforced by the judgment of plaintiff's intestate, the foreman gave the orders, and the plaintiff's intestate and the other workmen removed the column—the plaintiff's intestate then resuming work in inserting timbers to block up the roof and sides of the tunnel. Now, if after this examination the foreman honestly believed that it was safe to remove the column, and acting on such belief it was the exercise of ordinary care and prudence to remove the column, he was not negligent. Negligence is acting as a man of ordinary care and prudence would not act under the circumstances, and if the act complained of was done in the honest belief that it was a safe and proper thing to do, and in acting upon that belief he acted with ordinary care and prudence, there is no negligence.

I also think that the damages are excessive; but, as there must be a new trial, it is not necessary to consider that question.

The judgment and order should therefore be reversed, and a new trial ordered, with costs to appellant to abide event.

McLAUGHLIN, CLARKE, and SCOTT, JJ., concur. LAUGHLIN, J., concurs in result.