TOPPI v. McDONALD.

(Supreme Court, Appellate Division, First Department. November 6, 1908.)

1. MASTER AND SERVANT (§ 101*) — PLACE OF WORK — APPLICABILITY OF DOCTRINE.

A tunnel in course of construction is not a place of work, within the rule requiring an employer to provide a safe place of work; the work creating the place itself.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 101.*]

2. NEGLIGENCE (§ 1*)—"ACTIONABLE NEGLIGENCE"—WHAT CONSTITUTES.

"Actionable negligence" consists in a failure of duty, the omission of something which ought to have been done, or the doing of something which ought not to have been done.

[Ed. Note.—For other cases,. see Negligence, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 1, pp. 148–149; vol. 8, p. 7563.]

3. NEGLIGENCE (§ 121*)—ACTION FOR INJURY—BURDEN OF PROOF.

In a negligence action, the burden is on plaintiff to point out the act negligently done or omitted.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 224; Dec. Dig. § 121.*]

4. MASTER AND SERVANT (§ 278*) — NEGLIGENCE OF FOREMAN — EFFECT OF HIS DEATH.

In an action for death of an employé caused by his foreman's negligence, it is no defense that the foreman lost his life in the accident.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 278.*]

5. MASTER AND SERVANT (§ 287*) — DEATH OF EMPLOYÉ — TUNNEL CAVE-IN—NEGLIGENCE—JURY QUESTION.

Under the evidence in an action for the death of an employé in the construction of a tunnel, caused by a cave-in, *held* a jury question whether the foreman was negligent in ordering his men into the tunnel when he did.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1060; Dec. Dig. § 287.*]

6. TRIAL (§ 139*)—PROVINCE OF JURY.

Where reasonable men may differ as to the proper conclusion to be drawn from facts shown, that conclusion is for the jury and not the court.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333; Dec. Dig. § 139.*]

7. MASTER AND SERVANT (§ 279*)—DEATH OF EMPLOYÉ—NEGLIGENCE—EVIDENCE—SUFFICIENCY.

In an action for the death of an employé in the construction of a tunnel, caused by a cave-in, a verdict for plaintiff on the theory that the foreman was negligent in ordering his men into the tunnel when he did *held* not against the evidence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 979; Dec. Dig. § 279.*]

Ingraham, J., dissenting.

Appeal from Trial Term, New York County.

Action by Florentina Toppi, administratrix of Louis Toppi, against John B. McDonald. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Nicoll, Anable & Lindsay (Pratt A. Brown, of counsel), for appellant.

Thomas J. O'Neill, for respondent.

CLARKE, J. The defendant was engaged in constructing a tunnel from Ft. George southerly as a part of the rapid transit subway in the city of New York. The tunnel was being driven through rock known as "Manhattan schist." The rock was of such a character as to re-

quire support of the roof of the tunnel. The method of excavation was by the use of steam drills and blasting with dynamite. When a sufficient space had been cleared, long, heavy beams, called "wall plates," were placed, one upon each side of the excavation, upon which, as foundations, segmental arches of heavy beams were erected about three to four feet apart. The roof being so supported, the under half of the tunnel, until this time called the "bench," was then excavated, heavy posts being placed under the wall plates, as the rock was removed, to support them and the segmental arches above. As the segmental arches could not be placed until the wall plates were in position, and as these could not be introduced until the rock was excavated, it is apparent that as the tunnel was driven south there was always a space where the segmental arches were not placed, which included the heading proper, where the forward work was in process of accomplishment, and a space behind it, where the tunnel was being enlarged sufficiently to put in the wall plates and upon them the segmental arches. At this place the roof was supported by what were called "plumb posts," consisting of heavy timbers resting upon the rocky floor and against the roof, wedged up so as to be tight and placed according to the judgment of those in charge of the work.

On October 24, 1903, the heading or working end of the tunnel was in this condition: A crack had been discovered in the roof, beyond which and to the south three segmental arches had been placed. At about 30 feet south from the crack alluded to, another crack had been discovered. At or about this crack two large plumb posts had been placed, and beyond and around a large number of other posts were in position, protecting the roof above the heading proper. The immediate work at the locus in quo was the blasting out of the bench on both sides of the tunnel to permit the extension of the wall plate beams, upon which could be erected the segmental arches. There had been drilled from 21 to 24 holes, about 8 feet in depth, each containing about three-quarters of a pound of explosive. These holes were to be fired in three blasts, about 8 holes in each blast. Sullivan was in charge of the workmen, consisting of about 24 men at the time in question. Everything being in readiness, the men were ordered back in the tunnel and retreated about 300 feet, and the first blast was fired. After the blast Sullivan, with three of the drill runners, went back to connect the holes with the electric wire for the second blast. It was discovered that the bench was covered with rock and débris from the blast, and that the two props or plumb posts which had been put up in the vicinity of the southerly crack, heretofore alluded to, were down, presumptively blown down by the blast. Sullivan made an inspection and sounded the rock with a steel bar. It was in evidence that if the rock was solid it gave a clear sound, but if disintegrated what was described as a punky sound, and that the method of testing with the steel bar was the one commonly in use and the proper way of making such inspection. These men again retired and the second blast was fired, and again they returned to connect the holes for the last blast. There is no evidence of any sounding of the wall or roof at this time. Again they retired, and the third blast was fired. There was quite a little smoke from the burning powder, and they waited for about 10

or 15 minutes; the gang being about 25 or 30 feet further out in the tunnel than Sullivan and his immediate companions. Sullivan said, "Come on, it is clear enough now," to Reynolds, Conners, McCormick, and the electrician. There was no light at that time, except a gasoline torch and a miner's lamp. The electric lights had been taken down for the purpose of permitting the blasts to be fired. Sullivan led the way. He had the torch. They started to get the wires in shape to get light. The electrician was putting up his wires. Sullivan stood in the center of the bench with the miner's torch in his hand. The bench was piled up with small broken stone from the shot from both sides meeting in the center and spreading out. It was from 6 to 7 feet from the bench to the roof of the tunnel. Toppi, the deceased, was acting as helper for one of the drill runners, named Conners, upon that night. Just a few minutes before the cave-in he was seen to hang the lantern up on the rock by the timber. He was watching the electrician trying to get his wires over the segmental arch timber. This was directly under the last of the segmental arches. There was a nail in the segmental timber cap, and the electrician was endeavoring to throw his wire over that nail. McCormick testified:

"Everybody wanted light. I was watching him, because I had my cluster on the east side down by the drill, ready to drill as soon as I could get light."

While this was going on, the men busily engaged in attempting to string the wires, so as to get light enough, an enormous piece of rock from the roof, 30 feet long, some 8 feet in depth, weighing about 120 tons, fell, and in its fall carried forward and down towards the south the three last segmental arches. The foreman, Sullivan, and Toppi, the administratrix's decedent, were killed by this fall. The plaintiff having had a verdict, the defendant appeals from the judgment entered thereon and from the order denying its motion for a new trial.

Many of the questions argued we do not consider presented by the record. The case was submitted to the jury upon the theory that Sullivan, the foreman, was the alter ego of the defendant, or a superintendent engaged in acts of superintendency, for whose negligence, if such there was, the defendant was liable. We find this submission upon this theory to have been acquiesced in by the defendant, and confine our examination of the case to the consideration of the question whether, upon the theory presented, the evidence sustains the verdict.

The question of the obligation of a master to provide a safe place for his workmen to do their work, in the ordinary acceptance of the terms, is not involved, because it has been frequently held that where the workmen are engaged in making the very place in which they work the rule does not apply. A tunnel through the rocks, blasted by dynamite, is obviously not a place provided by the employer in which his laborers shall work; but the work in which they are employed creates the place itself.

The negligence alleged is not replacing the plumb posts after they had been discovered to have been blown down by the first blast, or the ordering of the men in to the work before the roof had been inspected and determined to be safe. I think the weight of evidence leads to the conclusion that no order had been given to the men generally to go to

work; that Sullivan's statement to his drill drivers and their helpers and the electrician to "come on, the place is clear now," was for the purpose of getting the electric light going, without which nothing could be done either by way of work or inspection. Actionable negligence consists of a failure of duty, the omission of something which ought to have been done, or the doing of something which ought not to have been done, and the burden is laid upon the plaintiff of pointing out the particular thing so omitted or done. Here was a place known to be dangerous. The cracks in the roof had been discovered, and posts had been placed to support them. It was known that those posts had been blown down, and there had been no inspection or opportunity to inspect after the last blast. If Toppi was Conners' helper, as McCormick swears he was, and went forward and was engaged with him and the other drill drivers when they and the electrician advanced in response to Sullivan's statement, "Come on, it is all clear now," it is obvious that he was at work under the direct orders of his superior, given to the particular group of workmen of which he was a member.

The question is, was it negligent, under the circumstances disclosed, where a tunnel was in such faulty, dangerous, and treacherous rock as to have required plumb posts to be erected at the particular place to hold up the roof, after the explosion of three blasts, each including eight holes, loaded with three-quarters of a pound of dynamite each, which had covered the bench with débris to the height of six or seven feet, and the first one of which had knocked down the plumb posts, to lead and order the men in, so soon after the explosion, the tunnel full of smoke, even if we assume the sole purpose was for the work of getting the lights in condition to make an inspection, and so far that, when the rock fell at the precise place where it had been propped and where the props had been blown out, the men were caught, crushed, and killed thereby. It is no answer to say that Sullivan lost his own life. Many a man meets with an accident due to his own negligence. It seems to me that a question of fact, and not of law, was presented. Being a question of fact, it was for the determination of the jury. Where reasonable men may differ as to the proper conclusion to be drawn from the facts shown, that conclusion is for the jury, and not the court. This court cannot say upon this record that the verdict was against the evidence, or against the weight thereof.

Therefore the judgment should be affirmed, with costs to the respondent. All concur, except INGRAHAM, J., who dissents.

INGRAHAM, J. (dissenting). Assuming that Sullivan was a superintendent for whose negligence the defendant was liable, the evidence does not disclose that he was negligent. It is recognized in the prevailing opinion that "the burden is laid upon the plaintiff of pointing out the particular thing so omitted or done." The men were at work in a place made dangerous by the necessities of the work in which they were engaged; and after the blasts it was necessary that some of the employés should go into the heading to prepare for the excavation. The first thing it was necessary to do was to prepare lights to make the necessary examination to protect the men who were to continue the work, and it was this duty in which Sullivan was engaged at the time

of the accident. The roof could not be protected until the men went into the heading to do the work necessary for that purpose. Sullivan himself led the men, and was engaged in stringing the lights when the rock fell. It is not contended that Sullivan could have done this work alone. He went in with the men who were engaged in stringing the lights, which were necessary before any work either of investigation or protection could be done; and it is neither suggested in the prevailing opinion nor by counsel for the plaintiff how the work could have been done in any way, except that adopted by Sullivan, which would have avoided the accident. Sullivan, the superintendent, led the men engaged in the work into this dangerous place, and so far as this record discloses he acted with the utmost prudence. There was nothing to suggest that his waiting until the smoke was blown away was called for by the situation as it was known to exist, and the presence of the smoke had nothing to do with the accident. He did not order the men to return to work, nor did he expressly order this deceased to accompany him. What he did was to order those engaged in the preliminary work necessary to make the place safe for the prosecution of the work to accompany him into the tunnel to perform that duty, and while engaged in the performance of that duty the accident happened that resulted in the death of both Sullivan and the plaintiff's intestate.

I therefore dissent from the affirmance of this judgment.