### McGOWAN v. NEW YORK CONTRACTING CO., PENNSYLVANIA TERMINAL.

(Supreme Court, Appellate Division, First Department.  February 3, 1911.)

1. MASTER AND SERVANT (§ 190*)—MASTER'S LIABILITY—NEGLIGENCE OF FELLOW SERVANTS—EFFECT.

The servant of a construction company who was injured by the explosion of dynamite in a hole which he was preparing for a blast under the direction of the blaster, who was in charge of the gang, could not at common law recover for the negligence of the blaster for he was plaintiff's fellow servant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 449–474; Dec. Dig. § 190.*]

2. MASTER AND SERVANT (§ 107*)—MASTER'S LIABILITY—SAFE PLACE TO WORK —DUTY OF MASTER.

Where a servant with others was engaged in blasting out a trench, and they were changing the nature of the place as the work progressed, the master was under no duty to furnish a safe place in which to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202; Dec. Dig. § 107.*]

3. MASTER AND SERVANT (§ 286*)—MASTER'S LIABILITY—RULES—DUTY TO PROMULGATE—QUESTION FOR JURY.

Where a servant who was injured by a blast sought to recover from the master on the ground that he had not made rules for the safety of his employés, and it was not shown in evidence what rules, if any, had been made, or what was a practical rule for greater safety, this question should not have been submitted to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1037; Dec. Dig. § 286.*]

4. MASTER AND SERVANT (§ 107*)—MASTER'S LIABILITY—TOOLS AND PLACES FOR WORK—BLASTING—EMPLOYER'S LIABILITY ACT —"WAY."

Where a construction company was blasting a trench in an excavation, the rock which was being blasted out was not under the employer's liability act (Consol. Laws, c. 31), a "way" provided by the master for his servants.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 200; Dec. Dig. § 107.*

For other definitions, see Words and Phrases, vol. 8, pp. 7417, 7418; vol. 8, p. 7834; vol. 8, pp. 7420, 7421.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. MASTER AND SERVANT (§ 107*)—MASTER'S LIABILITY—TOOLS AND MACHIN-
    ERY—"WORKS AND MACHINERY."
        Where a construction company was blasting a trench in an excavation,
    the holes made for blasts and the dynamite used were not, under the em-
    ployer's liability act (Consol. Laws, c. 31), a part of the "works or ma-
    chinery" supplied by the master.
        [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 200;
    Dec. Dig. § 107.*
        For other definitions, see Words and Phrases, vol. 8, pp. 7420, 7421;
    vol. 8, p. 7524.]

Appeal from Trial Term, New York County.

Action by James McGowan against the New York Contracting Com-
pany, Pennsylvania Terminal. From a judgment for plaintiff, de-
fendant appeals. Reversed and remanded.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE,
SCOTT, and MILLER, JJ.

John C. Toole, for appellant.
John B. Leavitt, for respondent.

LAUGHLIN, J. On the 10th day of January, 1908, plaintiff,
while in the employ of defendant in the capacity of attending a blaster,
who was also one of its employés and in charge of a gang of five or
six men engaged in blasting rock, was severely injured by the ex-
plosion of a blast of dynamite, and he brought this action to recover
damages. The defendant had the contract for making the necessary
excavations for the Pennsylvania Railroad Terminal on Manhattan
Island, and at the time in question was making a cut or trench from
seven to ten feet wide and about eight feet deep through the rock
below the level of the main rock excavation for the terminal, in
which ducts, for the transmission of electric power, were to be placed.
The work was progressing from the east towards the west and had
then reached a point about 120 feet west of Eighth avenue between
Thirty-Second and Thirty-Third streets. Rows of holes three inches
in diameter, about eighteen inches or two feet apart, and about the same
distance apart in the rows, and five or six feet deep, were drilled
in the rock in lines virtually parallel running northerly and southerly
across the top of the unexcavated rock, and then one or two rows
at a time were charged with dynamite by the blaster and exploded to-
gether by electricity. The broken and loosened rock and earth were
removed by another gang of men. The accident occurred on Mon-
day before any blasting had been done at that point on that day.
The preceding Saturday the blaster in charge of this gang of men
was absent, and a blaster from another part of the work had been
sent to take his place, and he brought his own assistants with him.
Plaintiff brought material to them, but did not help prepare the
blasts or give particular attention to their preparation thereof. Short-
ly before work was suspended on Saturday, a row of holes was blast-
ed, and all of the blasts exploded, as was intended, throwing off
the rock the width and depth of the trench and leaving practically
a straight line of solid rock at the westerly end of the excavation.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Evidently other holes had been drilled to the west at the time which were not ready to be, and should not have been, charged with dynamite.

On Monday morning the drillers proceeded with their work. The plaintiff and the other mmebers of his gang had been sent to another part of the work after the last blast was set off on Saturday, and they resumed work at the same place on Monday; but later on they were ordered back to this place to prepare two rows of holes for the insertion of the sticks of dynamite. When holes were drilled to the depth required, it was the duty of the drillers to insert in the top of the hole a wooden plug in the form of a top to prevent material falling in which it would be necessary to remove before inserting the dynamite. When plaintiff returned to this place to assist in preparing the two rows for blasting, a driller was at work on a hole in the easterly row and toward the southerly end of it, which had not been drilled to the depth required. It seems that it rested with the blaster to determine by testing the depth of the holes whether they were drilled sufficiently deep, and he had authority to require the drillers to return to a hole and drill it deeper after it had been left and plugged by them. The inference is that he had done that on this occasion, although it does not expressly so appear. Plaintiff and others of his gang first removed the plugs and cleaned out the holes in the second row from the trench they were excavating, and, when they finished, the attention of plaintiff was drawn to the northerly hole in the first row or row nearest the end of the trench to see if it was clear. According to the testimony, there was a plug in it, and it had every appearance of being in the condition in which it had been left by the drillers. He removed the plug and started to insert a "Jiffer steel," which is a steel bar an inch in diameter and seven feet long with a flat drill head on the lower end and is used for hand drilling and for crushing stone chips in cleaning out the holes, and, when he poked the bar down in the hole to the depth of one, two, or three feet, the explosion took place which inflicted the injuries. The fair inference is that the dynamite which exploded was in this hole.

The plaintiff in his complaint charges negligence in failing to promulgate a rule for his protection in probing drill holes, in failing to furnish him with a safe place to work, and in failing to inspect the hole before placing him at work thereon. These charges relate to the liability at common law. He also charges a defect in the "ways" connected with the defendant's business at the point in question, which had not been discovered owing to the negligence of defendant and of the person in its service intrusted with the duty of seeing that the "ways" were in proper condition, and failure to exercise proper superintendence over the work. Those charges relate to a liability under the employer's liability act (Consol. Laws, c. 31), and are, perhaps, sufficient to charge a negligent defect in "ways," if there were any question of "ways" in the case, and negligence of a superintendent, for the defendant, being a corporation, must act through agents. Harris v. Baltimore Machine & El. Works, 188 N. Y. 141, 80 N. E. 1028. The notice served under the employer's liability act charges

negligence in these two particulars and contains the same charges of negligence with respect to liability at common law as are set forth in the complaint.

At the commencement of the trial, a motion was made by counsel for defendant to require plaintiff to elect between holding defendant liable at common law, and under the statute plaintiff objected, and the motion was denied. This is only important as showing that counsel for plaintiff insisted throughout the trial on holding defendant on both theories.

At the close of plaintiff's case, counsel for defendant separately moved for a dismissal of the complaint with respect to liability at common law and under the statute. He then requested the court to rule as to whether the charges of negligence with respect to rules and safe place were to be submitted to the jury, and he also moved to strike out the allegations of the complaint with respect thereto, which motions were denied. He also requested the court to rule that there was no question for the consideration of the jury with respect to a defect in works, ways, or machinery. In answer to an inquiry by the court with respect to what was claimed in this regard, counsel for plaintiff said "that they did not have a safe place." The court thereupon declined to rule as requested. The defendant then rested its case and renewed its several motions, which were denied. During the discussion thereon, counsel for defendant drew the attention of the court to an admission made by counsel for plaintiff during the trial to the effect that no negligence was claimed with respect to charging the holes with dynamite, and the admission was then substantially renewed; and at the close of the charge counsel for plaintiff, in consenting that the court charge a request made in behalf of defendant to the effect that there was no claim made that there was any defect in the method of charging the holes involved in the blast on Saturday, which was charged, said:

"That is not the point in this case. We make no charge of negligence in putting the dynamite in. We charge negligence in failing to discover."

An exception was duly taken to each ruling of the court to which attention has been drawn. In submitting the case to the jury, the court charged quite fully with respect to the duty of an employer of men to furnish them with a safe place in which to perform their duties and with respect to making rules for their protection. Counsel for defendant excepted to the submission of these questions to the jury and separately requested the court to instruct the jury that they could not predicate negligence on failure to make and promulgate rules, and that the defendant was not bound to keep the place where plaintiff was working reasonably safe in view of the fact that it was constantly changing, and that the jury would not be warranted in finding that there was any defect in the ways, works, or machinery connected with the business of the defendant, and he excepted to the refusal of the court to so charge.

It scarcely requires argument, after this statement of the issues presented by the pleadings and submitted to the jury, to show that the verdict cannot be sustained. It is perfectly clear that at common

law the action cannot be maintained on these facts, for the plaintiff's foreman and fellow laborers would be deemed coemployés, the risk of whose negligence would be assumed by him, and the rule with respect to the duty of the master to furnish a reasonably safe place for his employés while performing the work assigned to them has no application where, as here, the men themselves were making and changing the place as the work progresses. Capasso v. Woolfolk, 163 N. Y. 472, 57 N. E. 760; McCosker v. L. I. R. R. Co., 84 N. Y. 77; Gmaehle v. Rosenberg, 178 N. Y. 147, 70 N. E. 411; Perry v. Rogers, 157 N. Y. 251, 51 N. E. 1021; Vogle v. Am. Bridge Co., 180 N. Y. 373, 73 N. E. 1, 70 L. R. A. 725; Foster v. International Paper Co., 183 N. Y. 45, 75 N. E. 933; Citrone v. O'Rourke Eng. Co., 188 N. Y. 339, 80 N. E. 1092, 19 L. R. A. (N. S.) 340; Russell v. Lehigh Valley R. R. Co., 188 N. Y. 344, 81 N. E. 122, 19 L. R. A. (N. S.) 344; Toppi v. McDonald, 128 App. Div. 443, 112 N. Y. Supp. 821, affirmed 199 N. Y. 585, 93 N. E. 1133; and Bertolami v. United Engineering Cons. Co., 120 App. Div. 192, 105 N. Y. Supp. 90.

Moreover, on the facts here presented, no negligence could be predicated on the failure of the defendant to make and promulgate rules for the safety of its employés. There is no evidence as to what rules, if any, it made and promulgated; and there is no evidence that any practical rule for greater safety had been adopted and followed by others engaged in like work. The evidence does not point to such a rule, and the attention of the jury was not drawn to any particular rule that should have been adopted. It is evident therefore that the court erred in leaving the question of the liability of the defendant at common law to the jury, either upon the theory that it failed to furnish a safe place for the plaintiff to work, or that it failed to adopt and promulgate proper rules for his protection.

The court likewise erred in permitting the jury to find a verdict against the defendant on the theory that it was guilty of negligence with respect to some defect in its ways, works, or machinery, for the provisions of the employer's liability act with respect to ways, works, and machinery manifestly have no application in the circumstances here disclosed. There was no defect charged with respect to "works" or "machinery"; but it is quite clear that there was no "way, work, or machinery" furnished or provided by the master. It would not do to hold that the rock in which the holes were drilled and which was being constantly blasted away was provided by the master as a "way" for the use of the employés, and argument is not needed to demonstrate that neither the rock in which the hole was drilled nor the dynamite which was inserted in it was any part of the "works" or "machinery" furnished or provided by the master for use in its business.

We do not deem it necessary to pass upon the other alleged errors in the charge, as they will doubtless be obviated on the new trial.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.